IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:22-cv-00116-MR-WCM

| | |
|---|---|
| RACHEL J. HENSLEY, ) <br> ) <br> Plaintiff, ) <br> ) <br> ) <br> v. ) <br> ) <br> WALMART ASSOCIATES, INC., ) <br> ) <br> Defendant. ) <br> _____ ) | MEMORANDUM AND <br> RECOMMENDATION |

This matter is before the Court on a Partial Motion to Dismiss Plaintiff's Amended Complaint (the "Motion to Dismiss," Doc. 10) filed by Walmart Associates, Inc. ("Defendant"). The Motion to Dismiss has been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I. Relevant Procedural Background

On May 6, 2022, Rachel J. Hensley ("Plaintiff") filed a Complaint against Defendant in the Superior Court of Buncombe County, North Carolina. Doc. 1-2.

On June 8, 2022, Defendant removed the action to this Court. Doc. 1.

On July 1, 2022, Plaintiff filed an Amended Complaint. Doc. 9.

1

On July 15, 2022, Defendant filed the Motion to Dismiss with a supporting memorandum. Docs. 10, 11. Plaintiff has filed a response, and Defendant has replied. Docs. 13, 14.

A hearing on the Motion to Dismiss was conducted on November 2, 2022.

## II. Plaintiff's Allegations

In pertinent part, Plaintiff alleges as follows:

In December of 2018, Plaintiff was employed by Defendant as a "Cake Decorator." Doc. 9 at ¶ 7. Her position was later reclassified as "Deli and Bakery Associate." Id.

During her employment, Plaintiff was diagnosed with bipolar disorder, attention deficit hyperactivity disorder, and post-traumatic stress disorder such that she is an "individual with a physical or mental impairment that substantially limits one or more life activities…." Id. at ¶ 8. Plaintiff's mental conditions "were triggered by stress in her working environment with Defendant during the COVID-19 pandemic," and she was approved for short-term disability from May 4, 2021 through November 14, 2021. Id. at ¶¶ 9, 10. Plaintiff was prescribed various medications for her conditions and her doctor determined that she would need to avoid extreme stress. Id. at ¶¶ 11, 12.

Before her return to work, Plaintiff met with Defendant's store manager and advised that she would "need an accommodation of only working 15 hours each week and not working in the Deli due to the stress of the environment."

Id. at ¶ 13. Defendant's store manager agreed to Plaintiff's requested accommodation. Id.

However, when Plaintiff received her work schedule, it showed that she was scheduled to work 40 hours per week in the bakery. Id. at ¶ 14. Plaintiff sent a text message to the store manager "stating that it was not as they had agreed upon and that she could not comply with the proposed schedule due to her disabilities." Id. In response, the manager stated that he would have Plaintiff terminated. Id.

### III. Legal Standards

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192. That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord

3

Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); accord Consumeraffairs.com, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. Twombly, 550 U.S. at 570; Consumeraffairs.com, 591 F.3d at 256.

IV. Discussion

A. Subject Matter Jurisdiction

In its Notice of Removal, Defendant asserted that this Court may exercise federal subject matter jurisdiction pursuant to both 28 U.S.C. §§ 1331 and 1332. Doc. 1.

In the Amended Complaint, Plaintiff cites 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 12117 as the bases for this Court's jurisdiction and alleges that both Plaintiff and Defendant are citizens of North Carolina. In its Answer, Defendant denies that it is a North Carolina citizen. Doc. 12.[1]

During the November 2 hearing, Plaintiff confirmed that she was asserting a claim pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112, et seq. (the "ADA"). Defendant acknowledged that Plaintiff has

---

[1] In its Notice of Removal, Defendant states that it is a Delaware corporation with its principal place of business in Arkansas. Doc. 1 at ¶ 20.

4

Case 1:22-cv-00116-MR-WCM   Document 16   Filed 11/04/22   Page 4 of 11

asserted an ADA claim, and that Defendant is not seeking its dismissal. Therefore, the Court may exercise subject matter jurisdiction pursuant to 28 U.S.C. §1331.

### B. Title VII

Plaintiff's Amended Complaint includes citations to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"). See Doc. 9 at ¶¶ 1, 5, 19. Defendant initially moved to dismiss any Title VII claim, "to the extent this Court construes the Amended Complaint" to include such a claim. See Doc. 11 at 1, n. 1.

Subsequently, both in her briefing and during the November 2 hearing, Plaintiff confirmed that she is not making a Title VII claim. See Doc. 13 at 1. As a result, Defendant agreed during the hearing that the Motion to Dismiss could be denied as moot with respect to any Title VII claim.

### C. Wrongful Discharge in Violation of Public Policy

Under North Carolina law, an employer generally may terminate an at-will employee for any reason, or no reason at all. Garner v. Rentenbach Constructors Inc., 350 N.C. 567, 568-572 (1999); see also Belton v. Dodson Brothers Exterminating Company, Inc., No. 1:09cv106, 2009 WL 3200035 (M.D.N.C. Sept. 30, 2009) ("the relationship is terminable at the will of either party without regard to the quality of performance of either party").

5

However, North Carolina courts have recognized a limited exception to the employment-at-will rule pursuant to which an at-will employees may bring a claim for wrongful discharge when the employee's dismissal occurred "for a reason that violates public policy." Considine v. Compass Group USA, Inc., 145 N.C.App. 314, 317, aff'd, 354 N.C. 568 (2001).

Here, Plaintiff alleges that her termination violated North Carolina's public policy as it appears in the North Carolina Equal Employment Practices Act ("NCEEPA"), which provides:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C.G.S. § 143.422.2(a).

During the November 2 hearing, defense counsel stated that Defendant is not seeking the dismissal of Plaintiff's wrongful discharge claim to the extent that claim is based on alleged discrimination. See Polk v. Mecklenburg County, No. 3:20-CV-00483-FDW-DCK, 2021 WL 1601089, at *5 (W.D.N.C. April 22, 2021) (finding that plaintiff had "plausibly alleged her termination was a result of her alleged disability status" and therefore denying defendant's motion to dismiss plaintiff's claim of wrongful termination in violation of public policy

under the NCEEPA); Simmons v. Chemol Corp., 137 N.C.App. 319, 322 (2000) (wrongful discharge claim for handicap discrimination based upon NCEEPA).

Defendant argued, however, that the public policy described by the NCEEPA cannot support a wrongful discharge claim to the extent such a claim is based on alleged retaliation. See Ramos v. Carolina Motor Club, Inc., No. 3:17-cv-00212-RJC-DSC, 2018 WL 3040028, at *11 (W.D.N.C. June 19, 2018) (stating that the NCEEPA "'expresses the policy of North Carolina with respect to employment discrimination on account of race, religion, color, national origin, age, sex or handicap. It does not express a public policy concerning harassment, failure to promote or retaliation'") (quoting Chung v. BNR, Inc., 16 F.Supp.2d 632, 634 (E.D.N.C. 1997)).

In response, Plaintiff clarified that she is only making a claim of wrongful discharge in violation of public policy based on alleged discrimination. In light of this clarification, Defendant agreed that the Motion to Dismiss could be denied as moot with respect to this claim.

### D. Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress are: (1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress." Dickens v. Puryear, 302 N.C. 437, 452 (1981) (citations and quotation marks omitted). To be considered "extreme and outrageous," the conduct must be "'so outrageous in character, and so

7

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Hogan v. Forsyth Country Club Co., 79 N.C.App. 483, 493 (1986) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Whether conduct qualifies as "extreme and outrageous" is a question of law for the court. See e.g., Lenins v. K–Mart Corp., 98 N.C.App. 590, 599 (1990).

"Under North Carolina law, it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support an IIED claim." Howard v. College of the Albemarle, 262 F.Supp.3d 322, 340 (E.D.N.C. 2017) (collecting cases). "In cases where North Carolina courts have found IIED claims actionable, the conduct has been extremely egregious, and involved sexual advances, obscene language, and inappropriate touching." Bratcher v. Pharmaceutical Product Development, Inc., 545 F.Supp.2d 533, 545 (E.D.N.C. 2008) (collecting cases); cf., Hogan, 79 N.C.App. at 493–94 (finding no extreme or outrageous conduct where a supervisor screamed at employees, called them names, cursed at them, disrupted their work, threw menus at them, refused to grant pregnancy leave, and terminated an employee who left work due to labor pains).

Here, Plaintiff alleges that "Defendant's conduct in agreeing to accommodate Plaintiff's disability but then violating such agreement and discharging Plaintiff from employment when she objected to the breach of the

accommodation agreement constituted extreme and outrageous conduct pursuant to North Carolina law." Doc. 9 at ¶ 21.

However, Plaintiff has not provided any authorities finding that allegations similar to those alleged here constitute extreme and outrageous conduct and, even considering Plaintiff's allegations in the light most favorable to Plaintiff, the undersigned is not persuaded that those allegations are sufficient to state a claim for intentional infliction of emotional distress. See Thomas v. Northern Telecom, Inc., 157 F.Supp.2d 627, 635 (M.D.N.C. 2000) (finding that the defendant's alleged conduct was not extreme and outrageous where the plaintiff alleged, among other things, that the defendant created a hostile work environment and discharged her in retaliation for exercising her rights under Title VII); see also Lemay v. Bridgestone Bandag, LLC, No. 5:11–CV–723–BO, 2012 WL 3524838, at *3 (E.D.N.C. Aug. 14, 2012) (dismissing plaintiff's intentional infliction of emotional distress claim based on plaintiff's employer's initial refusal to provide plaintiff with an accommodation after four of plaintiff's fingers were amputated, and stating "[a]lthough the Court does not doubt [plaintiff's] frustration, the conduct surrounding the refused accommodation alleged in the complaint is not extreme and outrageous as a matter of law").

Accordingly, the undersigned will recommend that the Motion to Dismiss be granted as to Plaintiff's claim for intentional infliction of emotional distress.

## V. Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that Defendant's Motion to Dismiss (Doc. 10) be **GRANTED IN PART AND DENIED IN PART** as follows:

1. That the Motion to Dismiss be **DENIED AS MOOT** with respect to any claim for a violation of Title VII.

2. That the Motion to Dismiss be **DENIED AS MOOT** with respect to Plaintiff's claim of wrongful discharge in violation of public policy.

3. That the Motion to Dismiss be **GRANTED** with respect to Plaintiff's claim of intentional infliction of emotional distress, and that this claim be **DISMISSED**.[2]

Signed: November 3, 2022

W. Carleton Metcalf
United States Magistrate Judge

---

[2] In the event these recommendations are adopted, the case would proceed on Plaintiff's claim for violation of the ADA and her claim for wrongful discharge in violation of public policy.

10

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).